MARTIN B. ROSENTHAL and JULIE ROSENTHAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rosenthal v. Commissioner
Docket No. 10377-79.
United States Tax Court
T.C. Memo 1987-282; 1987 Tax Ct. Memo LEXIS 282; 53 T.C.M. (CCH) 1022; T.C.M. (RIA) 87282; June 8, 1987. Martin B. Rosenthal, pro se. Victoria Wilson-Fernandez, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: This case is before us on respondent's Motions for *283 Default as to deficiencies and for Summary Judgment as to fraud. We treat both as motions for summary judgment. In his notice of deficiency respondent determined deficiencies and additions to tax in the following amounts for the following years: Addition to Tax
Year
Deficiency
Sec. 6653(b) [1]
1974
$155,547.05
$77,773.53
1975
222,212.61
129,607.81
Procedural Background
On November 13, 1979, and after we granted petitioner's informal request to extend the time within which to file a proper amended petition, a petition was filed asserting error in respondent's determinations. [2] On January 11, 1980 respondent filed an answer denying the material allegations of the petition, and affirmatively pleading fraud against petitioner Martin B. Rosenthal ("petitioner"). *284 Respondent alleged in support of his fraud allegation that petitioner failed to report on a timely Federal income tax return $309,950.60 for the 1974 taxable year, and $502,815.81 for 1972. Respondent also alleged in support of its fraud allegation that petitioner maintained nominee brokerage accounts in the name of his brother, that petitioner failed to inform respondent's investigating agent about one such nominee account, that petitioner received and then destroyed brokerage account statements in 1974 and 1975 and a Form W-2 in 1975 from payors of income to him during those years, and that petitioner failed to maintain or submit for examination complete and adequate books of account and records of income-producing activity for each of the years in issue. Respondent alternatively alleged in his answer that if we did not find that parts of the underpayments of tax required to be shown on petitioner's timely filed returns were due to fraud, the additions to tax pursuant to sections 6651(a)(1) and 6653(a) were applicable. Respondent alleged the same facts in support of this allegation as were alleged in support of the fraud allegation. On May 22, 1980, Edward H. Weinberg entered *285 an appearance as an attorney on behalf of petitioner. On June 20, 1980, a reply was filed denying the fraud and negligence allegations of the answer. We granted leave to file the reply out of time. The case was set for trial on January 24, 1983, but on December 15, 1982, we granted a joint motion for continuance filed on November 23, 1982. The grounds for the motion were that a majority of respondent's records and certain of petitioner's records relating to the case were either only recently returned from or still in the hands of the United States Attorney for his use in connection with a grand jury investigation involving members of the New York Coffee and Sugar Exchange. On February 15, 1983, we granted Mr. Weinberg's Motion for Leave to Withdraw as Attorney for Petitioner. In that motion Mr. Weinberg states that petitioner has "engaged in an ongoing course of evasion and procrastination" in that he failed to respond in any manner to numerous letters from Mr. Weinberg. Specifically, Mr. Weinberg relayed from respondent a proposed settlement on October 4, 1982, and asked for petitioner's instructions as to whether the matter should be settled or further litigated. Although *286 this letter was followed up with many phone calls to petitioner's Florida office, [3] he failed to respond to Mr. Weinberg's requests for instructions. On November 1, 1982, when Mr. Weinberg learned that this case had been set for trial on January 28, 1983, he wrote petitioner by regular and certified mail asking for specific instructions. Petitioner did not reply. On April 9, 1985, respondent wrote to petitioner in Florida. In the letter respondent asked petitioner to communicate with him to prepare this case for trial, or respondent would move to dismiss the case for lack of prosecution. Petitioner did not reply. On August 20, 1986, petitioner was served at his Florida address with a notice setting case for trial on January 20, 1987. On November 4, 1986, respondent again wrote petitioner alerting him to the fact that the case had been set for trial and requesting that petitioner contact respondent's trial attorney to facilitate case preparation. On November 17, 1986, respondent again wrote to petitioner at his Florida address and enclosed a proposed stipulation of facts *287 for his review. Respondent requested that petitioner contact him or face a motion to dismiss the case. Petitioner replied to none of the communications. On December 5, 1986, respondent filed a Motion to Show Cause Why Proposed Facts in Evidence Should not be Accepted as Established pursuant to Rule 91(f). On December 8, 1986, we issued an Order to Show Cause under Rule 91(f). Petitioner failed to respond to such order within the time prescribed, and on January 7, 1987, we ordered that the facts and evidence set forth in respondent's proposed stipulation of facts be deemed established for purposes of this case pursuant to Rule 91(f)(3). On January 20, 1987, this case was called from the calendar and no appearance was made by or on behalf of petitioner. Respondent at that time made the motions under consideration here. FINDINGS OF FACT [4]
*288 During the years in issue, petitioners were married and resided in Kings Point, NY. Petitioner was a commodities broker during those years. He was not a dealer in commodities futures. He bought and sold commodities for the accounts of his clients as well as for his own account. On March 8, 1979, petitioner pled guilty to one criminal count of violating section 7203 for the willful failure to file a 1975 Federal income tax return. Petitioners' 1974 earned income, income from a "money pass" scheme and bank deposits not shown to be nontaxable were $320,939.00. [5] Based on this figure, their total 1974 tax liability is $155,547.05, none of which was reported on a timely filed Federal income tax return. Although an untimely return ultimately was filed, it reported no Federal tax liability. Petitioners' 1975 earned income, income from a "money pass" scheme and bank deposits not shown to be nontaxable were $507,459.00. *289 Based on this figure, their total tax liability is $258,928.61, [6] none of which was reported on a timely filed return and only $36,716.00 of which was reported on any return. During the years at issue, petitioner maintained nominee brokerage accounts in the name of his brother, not all of which were disclosed to respondent during an investigation of his income tax liabilities for the years at issue, even in response to a direct question about such accounts. During the years at issue, petitioner received brokerage account statements and in 1975 received a Form W-2 from payors of income to him during those years. Petitioner destroyed the statements and Form W-2. Petitioner failed to maintain or submit for examination by respondent complete and adequate books of account and records of his income-producing activities for each of the years in issue. Petitioners were required to file Federal income tax returns for the years in issue on or before April 15 of the succeeding *290 year and were aware of their obligation to do so. Petitioners did not obtain extensions of time in which to file timely returns for the years in issue. Petitioners failed to file timely income tax returns for the years in issue until after respondent began an investigation of their tax liabilities. OPINION Rule 121 provides that a party may move for summary judgment upon all or any part of the legal issues in controversy if there are no genuine issues of material fact. Rule 121(b). The burden of proving that there are no genuine issues of material fact is on the moving party. . Petitioners bear the burden of proving the statutory notice is in error. Rule 142(a). Petitioners did not appear at the trial session at which their case was called. They presented no evidence in support of their position. There is no material fact at issue. Respondent is entitled to a decision on the deficiencies as a matter of law. Summary judgment as to the deficiencies will be granted. With respect to the additions to tax under section 6653(b) the burden of proof is on respondent to prove by clear and convincing evidence that *291 an underpayment exists and that a part of the underpayment of tax is due to fraud with the intent to evade tax. Section 7454(a); Rule 142(b); ; . Respondent's burden can be satisfied through the compelled stipulation process of Rule 91(f). [7] The material facts deemed admitted with respect to fraud clearly and convincingly establish that, for the taxable year in issue, an underpayment of tax exists and part of the underpayment is due to fraud by petitioner Martin B. Rosenthal with intent to evade tax. Since there is no genuine issue as to any material fact present in the record, respondent is entitled to a decision as a matter of law, except as noted. [8] Respondent's Motion for Summary Judgment as to fraud will be granted, as modified. *292 An appropriate order will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Although petitioners generally put in dispute all the deficiencies and additions, they specifically allege error only with respect to $15,600 in miscellaneous income for 1974, $57,317.07 in income for 1975 and the determination disallowing claimed ordinary losses arising from transactions in silver options.↩
3. Apparently, petitioner moved to Florida in early 1981 under a Federal witness protection program.↩
4. Our findings are based on the facts deemed stipulated under Rule 91(f)(3). Occasionally, such as in the case of our finding that petitioner is not a dealer in commodities futures, the legal impact of the finding (i.e., the inapplicability of sec. 108 of the Tax Reform Act of 1984 as amended by sec. 1808(d)(4) of the Tax Reform Act of 1986, 100 Stat. 2818), would also be supported by petitioner's failure to adduce evidence showing the statute's applicability.↩
5. Mathematical errors in the itemized portion of the stipulation make it unclear whether petitioner's total gross income is $318,514.32 or $324,163.72. Since the net figure in the text above corresponds to the deficiency notice, we disregard the ambiguity.↩
6. The stipulation states this figure to be $259,215.61. The sum of the deficiency determined by respondent and the amount on the return in evidence, however, is the lower figure above. We use that lower figure.↩
7. See . See also .↩
8. Because respondent determined the fraud addition for 1975 based on an "underpayment" greater than that which we approved, see n. 6 above, the amount of that addition for that year must be reduced to accord with the lesser underpayment.↩